**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| CHRISTOPHER GRAY and | ) | |
| WILLIAM KOPPELMANN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| ST. LOUIS CITY BOARD OF ELECTION | ) | |
| COMMISIONERS, | ) | |
| | ) | |
| Defendant. | | |

**SUGGESTIONS IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING**
**ORDER AND PRELIMINARY INJUNCTION**
**AND FOR PERMANENT INJUNCTIVE RELIEF**

Come now Plaintiffs, Christopher Gray and William Koppelmann, and for their

Suggestions in Support of the Motion for Temporary Restraining Order and Preliminary

Injunction and for Permanent Injunctive Relief, state as follows:

## I.    INTRODUCTION

Plaintiffs Christopher Gray and William Koppelmann are registered voters in the City of

St. Louis and want to vote in the current election.  They are both blind.

Both men desire to vote absentee in the election scheduled for November 8, 2016, using

touch-screen machines with audio ballots.  They bring their Motion for Temporary Restraining

Order and Preliminary Injunction and for Permanent Injunctive Relief against Defendant St.

Louis City Board of Election Commissioners (hereafter "Election Board") to enjoin the Election

Board from denying individuals with disabilities an equal opportunity to cast their absentee votes

through the use of accessible electronic touch-screen voting machines.  Refusing to allow

Plaintiffs to vote using accessible devices violates Title II of the Americans With Disabilities Act

(2008) and Section 504 of the Rehabilitation Act.

## II.    STATEMENT OF FACTS

Plaintiffs Christopher Gray and William Koppelmann have been blind since birth.  Ex. 2, Par. 3; Ex. 3, Par. 3.   Both are residents of the City of St. Louis and are registered voters.  Ex. 2, Par. 4; Ex. 3, Par. 4.   They desire to vote in the current election scheduled for November 8, 2016, by using accessible voting machines during the absentee voting period, which opened on September 27, 2016, and closes on November 7, 2016.  Ex. 2, Par. 5; Ex. 3, Par. 5.

Mr. Gray is the Executive Director of the Missouri Council of the Blind, a Missouri nonprofit organization that advocates for blind Missourians.  Ex. 2, Par. 2.  Mr. Koppelmann is 73 years old and is retired from serving as a darkroom technician developing x-rays for various hospitals.  Ex. 3, Par. 2.

Both men want to vote in the current election**,** which includes votes for President, Vice-President, Governor, Attorney General and all other statewide offices, one of Missouri's U.S. Senate seats, and Congressional seats, as well as local races and issues.  They both desire to vote absentee at the Election Board office**.**  Ex. 2, Par. 3; Ex. 3, Par. 3. Neither of them is able to use a paper ballot due to their blindness.  Ex. 2, Par.6; Ex. 3, Par.7.

Both men can vote independently and privately if they can use a touch-screen machine programmed with an audio ballot, during the absentee voting period.  Ex. 2, Par. 7; Ex. 3, Par. 8.

Mr. Gray has requested a reasonable accommodation from the Election Board to allow him to use a touch-screen machine during the absentee period, but he has not been granted such an accommodation as of the date of filing of the Complaint.  Ex. 4.

The Election Board has indicated that it feels bound by the decision of the Missouri Court

of Appeals in *Franks v. Hubbard*, ED104797, Sept. 13, 2016, which held that due to certain requirements for absentee voting, such as the requirement for the ballot to be placed in an envelope, that touch-screen voting machines could not be used by anyone, including those with disabilities, for absentee voting in an election.  Ex. 4.  As a result, the Election Board has not made touch-screen machines available to Mr. Gray or Mr. Koppelmann during the absentee voting period.

According to Eric Fey, the Democratic Director of Elections in St. Louis County, St. Louis County is currently providing touch-screen voting machines with audio ballots for absentee voters with disabilities, and was able to do so without any undue burden or fundamental alteration of voting processes, programs, services, or activities.  Ex. 1, Par. 8, 11.

## III.    ARGUMENT

### A.  Legal Standard

This Court can issue a temporary restraining order and preliminary injunction, as well as permanent injunctive relief, if Plaintiffs meet the factors set forth by the Eighth Circuit for injunctive relief.

> (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). All four of these factors weigh in favor of Plaintiffs for temporary preliminary injunctive relief.  To obtain permanent injunctive relief, Plaintiffs must also show actual success on the merits, and Plaintiffs will meet this burden.  *Randolph v. Rogers*, 170 F.3d 850, 857 (8th Cir. 1999).

Because Plaintiffs' fundamental civil rights are at stake in this litigation, Plaintiffs will suffer irreparable harm in the absence of a preliminary and permanent injunction. The balance of equities weighs decidedly in Plaintiffs' favor**,** because if the Election Board is not preliminarily and permanently enjoined, Mr. Gray, Mr. Koppelmann and many others of the blind and otherwise disabled community will be denied the right to absentee vote privately, independently, and in an equally effective manner as non-disabled voters in the November 2016 presidential election, and in subsequent municipal, state, and federal elections. Conversely, the Election Board will suffer no harm by making its touch-screen voting machines available for absentee voters in the November 2016 election and subsequent elections**,** because it has provided touch-screen voting machines during absentee balloting in the past; has staff trained to use the voting machines; and has voting machines ready for use by Plaintiffs at the present time.  For the same reason, the relief requested by Plaintiffs will not require a fundamental alteration of the Election Board's programs, services, and activities.

Plaintiffs are likely to succeed on the merits because the ADA and Section 504 are clear in requiring that persons with disabilities have the same access to government services as persons who do not have disabilities. Finally the public interest will be served by enforcing the ADA and Section 504**,** by creating equal opportunities for individuals with disabilities to participate in civic life and exercise their fundamental right to vote.

Accordingly, Plaintiffs request this Court a temporary restraining order and preliminary injunction, and permanent injunctive relief, and require the Election Board to make the touch-screen voting machines available for absentee voting use for the November 2016 presidential election and beyond.

**B. Statutory Framework: Title II of the ADA and Section 504 of the Rehabilitation Act**

The Americans with Disabilities Act Amendments Act of 2008 (ADA), 42 U.S.C. §§12101-12213, guarantees equal access for qualified individuals to the benefits of the services, programs, or activities of a public entity.  Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §12132.  It is undisputed that Plaintiffs are qualified individuals with disabilities. The Election Board is a governmental body authorized by the State Legislature to administer and conduct "all public elections within the City of St. Louis in a fair, open and honest manner pursuant to federal, state and municipal law," according to its mission statement and pursuant to Section 115.017 RSMo (2016); and is clearly a public entity under Title II of the Americans with Disabilities Act.

In providing aids, benefits, or services, public entities may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others," nor may public entities provide qualified individuals with disabilities "an aid, benefit or service that is not as effective in affording equal opportunity" to gain the same result or benefit as provided to others.  28 C.F.R. §35.1230(b)(1)(ii)-(iii).

Proving a violation of Title II of the ADA requires a plaintiff to show that "1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999). "As an affirmative defense, a defendant may demonstrate that the requested accommodation would constitute an undue burden." *Id.* To

5

prove a Rehabilitation Act violation, the plaintiff must additionally establish that "the program or activity from which he is excluded receives federal financial assistance." *Id*. *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999). This additional requirement of the Rehabilitation Act is easily met: the Defendant has received federal funding to purchase voting machines. Ex. 1, Par. 12.

### C.  Recent Decision

The Fourth Circuit earlier this year held that a voting system that refused to allow voters with disabilities to use an accessible voting system during absentee voting violated the ADA and Section 504.  *National Federation of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016).  In *Lamone*, the Court of Appeals examined a claim that the Maryland State Board of Elections violated the ADA and Section 504 by refusing to allow disabled voters to use an online ballot marking tool for absentee voting. In determining whether the appropriate scope for their analysis was Maryland's voting system as a whole, or the absentee voting program as a stand-alone, the Fourth Circuit relied on *Alexander v. Choate*, 469 U.S. 287 (1985). In *Alexander*, the Supreme Court, examining a Rehabilitation Act case, stated that a "benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled." *Id*. at 301.  The Court in *Lamone* found that "we should proceed cautiously to avoid defining a public program so generally that we overlook real difficulties in accessing government services." *Lamone,* 813 F.3d at 504 (citing *Alexander v. Choate*, 469 U.S. at 301). In addition, ADA-implementing regulations require that a "public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability…."

6

28 C.F.R. § 35.130. This regulation reveals "a focus on accessibility at a more granular level than entire government programs – the level of 'policies, practices, and procedures.'" *Lamone*, 813 F.3d at 504-05. Therefore, the Circuit Court found "Maryland's absentee voting program is the appropriate subject of our ADA analysis." *Id.* at 505.

Similarly, the Southern District of Ohio recently considered a claim involving the use of an accessible ballot marking tool for mail-in absentee voting. In its analysis, the Court relied on the similarity of Maryland and Ohio absentee voting systems**,** that allow any person to vote absentee for any reason. *Hindel v. Husted*, No. 2:15-CV-3061, 2016 WL 2735935, at *5 (S.D. Ohio May 11, 2016). The court held that "expanding the scope of review beyond mail-in voting is improper in this case." *Id.* In both cases, the scope was accurately determined based on the availability of absentee voting to both disabled and non-disabled voters.

In this case, absentee voting should be analyzed as a stand-alone program or activity under the ADA. Just as the Fourth Circuit cautioned against broad definitions that would deny meaningful access and overlook real accessibility problems, here an analysis of the absentee program itself is necessary to ensure that voters with disabilities are afforded the same private, independent voting experience as voters without disabilities. In *Lamone,* it was held that an analysis of the accessibility of Maryland's full voting system was "overbroad and would undermine the purpose of the ADA and its implementing regulations." 813 F.3d at 503. The above cases differ slightly from this case in that the Maryland and Ohio absentee voting programs allow any voter to vote absentee for any reason. *See Id.* at 504, *Hindel v. Husted*, 2016 WL 2735935 at *17. In Missouri, the applicable absentee voting statute also provides that any voter can utilize the absentee voting system for any reason that falls within various categories, including absence from the jurisdiction on Election Day, or disability. Section 115.277, RSMo.

These limits fail to materially differentiate the Missouri absentee voting program from its Maryland or Ohio counterparts. Just as in Ohio and Maryland, the Missouri absentee voting system is open to any voter, regardless of disability or any other qualifiers. The required reasons for voting absentee are also neutral. While disability is one category, other categories, for instance absence from the jurisdiction on Election Day, do not necessarily exclude or include any groups of Missouri voters. Any voter who expects to be absent from the jurisdiction is permitted to utilize the absentee voting system, for a variety of facially neutral reasons. *Id.*

The Court in Lamone further explained that requiring a person with a disability to rely on another person to assist them did not comply with the ADA:   "We affirm the district court's conclusion that by effectively requiring disabled individuals to rely on the assistance of others to vote absentee, defendants have not provided plaintiffs with meaningful access to Maryland's absentee voting program."  *Id.* at 507.

The Court in *Lamone* also discussed the defense of the state that the use of the accessible voting methods was an undue burden and fundamental alteration of its voting program.  The Court rejected those arguments.  *Id.*  In the present case, the Democratic Director of Elections for the much larger St. Louis County, Eric Fey, states in his declaration that his County is already providing the touch-screen machines during absentee voting for persons with disabilities, and that it is not an undue burden or fundamental alteration of the program.  Ex. 1.

Likewise, the *Lamone* Court found that the reasonable modification proposed by the plaintiffs in that case was appropriate.  *Id.* at 507.   Mr. Gray and Mr. Koppelmann here propose the reasonable modification  of continuing the use of the touch-screen machines for absentee voting for persons with disabilities, a system which has been used in past elections, and can be easily implemented by the Election Board now.  *See* 28 C.F.R. 35.130(b)(7).

**D.  Irreparable Harm**

"Courts routinely deem restrictions on fundamental voting rights irreparable injury." *League of Women Voters of N. Carolina v. N. Carolina*, 769 F.3d 224, 247 (4th Cir. 2014), *cert. denied*.  "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964).

Touch-screen voting machines and audio programmed ballots allow Missourians with vision disabilities and physical impairments to vote effectively, privately, and independently. If disabled Missourians are denied the use of these tools during the absentee voting period, Plaintiffs and other voters with disabilities will not be able to vote in the private and independent manner available to any other absentee voter. No monetary remedy can adequately compensate Plaintiffs for the loss of a private and independent vote.

**E.  The harm faced by Plaintiffs greatly outweighs the burden placed on the Defendants.**

In this case, Plaintiffs face a harm that heavily outweighs the burden to be placed on the defendants. If Plaintiffs and other Missourians with disabilities are denied the use of touch-screen machines and audio ballots during the absentee voting period, they will also be denied the ability to vote in the private, independent, and effective manner afforded to voters without disabilities. Therefore, Plaintiffs' fundamental right to participate in democracy will be abridged based solely on their disability status, resulting in the harm of discrimination and exclusion from a foundational democratic exercise.

In contrast, the Defendants will suffer no harm if a preliminary injunction is granted.

According to Eric Fey, the Democratic Director of Elections in St. Louis County, his County is currently providing touch-screen voting machines with audio ballots for absentee voters with disabilities, and was able to do so without any fundamental alteration of voting processes.  Ex. 1, Par. 8, 11. The City Election Board already possesses, and in the past has utilized, the accessible voting machines at issue, including during absentee voting.  Affording Plaintiffs and similarly situated voters these accommodations during the absentee voting period should not impose any new burden on the Election Board. Accordingly, the balance of potential harms weighs heavily in favor of granting Plaintiffs a preliminary injunction.

### F. Plaintiffs will likely succeed on the merits of their ADA and Section 504 claims.

Plaintiffs are likely to prevail on the merits of their claims, because without access to the touch-screen voting machines, Plaintiffs will be required to sacrifice their right to vote privately, independently, and in an equally effective manner. Furthermore, because the Election Board already possesses fully accessible touch-screen voting machines and has made them available in previous elections, making the touch-screen machines available to voters during absentee voting in the November 2016 election and subsequent elections would not impose an undue burden on the Election Board or constitute a fundamental alteration of its programs, activities or services. Plaintiffs are likely to succeed on each of their claims brought under the ADA and Section 504 of the Rehabilitation Act.  The recent case from the Fourth Circuit also reinforces the likelihood of success on the merits for Plaintiffs.

By denying the use of otherwise accepted accessible voting tools during absentee voting, the Defendant is excluding Plaintiffs and similarly situated Missourians from the benefit of absentee voting, based solely on their disabilities. Plaintiffs are being denied the ability to vote in

a way that is "equal to that afforded others." 28 C.F.R. § 35.130(b) (1)(ii); 45 C.F.R. §

84.4(b)(1)(ii). The voting methods provided by Defendant are "not as effective in affording equal

opportunity" and do not "protect the privacy and independence of the individual with a

disability." 28 C.F.R. § 35.130(b)(1)(iii), § 35.160(b)(2); see 45 C.F.R. § 84.4(b)(1)(iii).

 Because Plaintiffs are unable to personally read their ballot, mark their ballot, or fill out the

statement on the absentee ballot envelope, they must rely on another person to effectively vote

absentee. Thus, they are forced to sacrifice the privacy and independence afforded to every

absentee voter who does not have disabilities, and the absentee voting program is ineffective in

giving such an equal opportunity to disabled voters.

Numerous courts have held that voting constitutes a "program" or "activity" under Title

II of the ADA and Section 504 of the Rehabilitation Act, and have upheld the right of

individuals with disabilities to vote privately and independently. *See Disabled in Action v. Bd. of

Elections in City of New York*, 752 F.3d 189, 199-200 (2d Cir. 2014), *California Council of the

Blind v. Cty. of Alameda*, 985 F. Supp. 2d 1229, 1232 (N.D. Cal. 2013), *Westchester Disabled

On the Move, Inc. v. Cty. of Westchester*, 346 F. Supp. 2d 473, 478 (S.D.N.Y. 2004).


**G. An injunction is in the public interest.**

An injunction serves to promote the fundamental right to vote and protect persons with

disabilities from discrimination. The purpose of the ADA is "to provide a clear and

comprehensive national mandate for the elimination of discrimination against individuals with

disabilities." *Lane*, 541 U.S. at 516 (quoting 42 U.S.C. § 12101 (b)(1)). Ensuring that voting is a

private and independent activity for all voters, regardless of disability status, is paramount to

fulfilling the intended purposes of the ADA and Section 504 of the Rehabilitation Act.  Finally,

accessible provisions during all voting periods encourages voting, and allows more people to vote effectively and with dignity. Promoting the exercise of a foundational democratic right in an non-discriminatory way, is certainly in the best interest of the public.

### H. Implications of *Franks v. Hubbard*

Plaintiffs are compelled to bring this action because the Election Board has stated it is prevented from allowing the use of touch-screen voting machines, even for voters with disabilities, during absentee voting, in light of the Missouri Court of Appeals decision in *Franks v. Hubbard*. That case arises out of the August 2, 2016, Primary Election to nominate a Democratic candidate to serve the 78th State House District in the Missouri House of Representatives. *Franks v. Hubbard*, No. ED104797, 2016 Mo. App. LEXIS 900 (Mo. App. E.D. 2016). Section 115.283 of the Missouri Revised Statutes requires absentee ballots cast in person or via mail to be placed inside a pre-printed ballot envelope "stating the voter's name, voting address, mailing address, and the voter's reason for voting an absentee ballot." This statute is what led the trial court to find the Election Board violated Missouri Law when it failed to use these sealed ballot envelopes during absentee voting. The Court of Appeals affirmed the findings of the trial court, and thus demanded sealed ballot envelopes to be used during absentee voting.

The ruling in *Franks* was not narrowly tailored to the special election so ordered, but appears to apply to all future elections in the State of Missouri. The order requiring all absentee votes to be placed in a sealed ballot envelope effectively eliminates the private, independent, and equal voting process for voters with visual impairments and/or physical disabilities because many of the touch-screen voting machines used in Missouri, including in the City of St. Louis,

internalize the voting data rather than printing out a vote receipt. Thus, under this ruling, rather than using a touch-screen machine with internalized data, a citizen with visual impairment is now required to fill out a paper ballot to be placed in the sealed ballot envelope. There is no conceivable manner in which this absentee paper ballot process could be done by a citizen with visual impairment, without aid from a caretaker or election official. Such aid would be a violation in itself of the fundamental right to a secret ballot.

Plaintiffs bring this action seeking a federal court ruling that Missouri's scheme for absentee voting must comply with federal law with regard to access for those with disabilities. They ask this Court to hold that Franks v. Hubbard does not apply to persons with disabilities and their ability to use accessible voting machines during the absentee voting period.


### I.   House Bill No. 1480

The Missouri Legislature this year passed legislation, which has been signed by the Governor, making it clear counties can use the touch-screen voting machines during absentee voting; however, that law does not take effect until January 1, 2018.  House Bill No. 1480 (A) (5) states as follows:

> For the purpose of processing absentee ballots, cast by voters in person in the office of the election authority, the election authority may cause voting machines to be put in order, set, adjusted, tested, and made ready for voting within one business day of the printing of the absentee ballots as provided in § 115.281. The election authority shall have the recording counter except for the protective counter on the voting machine set to zero (000). After the voting machines have been made ready for voting, the election authority shall not permit any person to handle any voting machine, except voters while they are voting and others expressly authorized by the election authority. The election authority shall neither be nor permit any other person to be in any position or near any position that enables the authority or person to see how any absentee voter has voted.

There are two aspects of HB 1480 which make it ineffective to help Plaintiffs.  First, as noted, the law is not effective until January 1**,** 2018.  Between now and that time, Missouri will hold an election on November 8, 2016, for which absentee voting is already underway.  That election includes races for President, Governor and all other statewide offices, as well as for United States Senator and Congressional races and various local races.  In addition, in April of 2017, the City of St. Louis will hold an election for Mayor and other offices.  Without relief from the Court, Plaintiffs and others will not be afforded the right to vote as they are entitled to**,** in multiple elections.

The second problem with HB1480 is that it states that the voting machines "may" be used for absentee balloting.  Even the new legislation does not mandate the use of the machines, even though the ADA and Section 504 require accessible voting devices for those with disabilities.  Nothing in HB1480 guarantees the rights of those with disabilities under the ADA and Section 504.

Meanwhile, the *Franks* decision is being viewed by the Election Board as prohibiting the use of accessible voting machines during absentee voting.

## CONCLUSION

The four *Dataphase* factors clearly weigh in favor of the issuance of a temporary restraining order and preliminary injunction, as well as permanent injunctive relief. Plaintiffs face irreparable harm to a fundamental right**;** this harm heavily outweighs potential harm to the Election Board; Plaintiffs are likely to succeed on their claims; and an injunction serves the public interest in promoting voting rights and eliminating discrimination toward people with disabilities.  For these reasons, Plaintiffs respectfully request that the Court grant their Motion for Temporary Restraining Order and Preliminary Injunction, and for permanent injunctive

relief; and order the Board to make the touch-screen voting machines and audio ballots available for people with disabilities for the 2016 Presidential Election absentee period and all future elections.


Respectfully Submitted,

/s/ John J. Ammann
John J. Ammann, Mo Bar # 34308
J.Thomas Mihalczo, Rule 13
Catherine Aubuchon, Rule 13
Saint Louis University Legal Clinic
100 North Tucker, Suite 704
St. Louis, Mo.  63101
314-977-2778; 314-977-1180 fax
ammannjj@slu.edu

/s/ Brendan D. Roediger
Brendan Roediger, Mo Bar # 60585                .
Saint Louis University Legal Clinic
100 North Tucker, Suite 704
St. Louis, Mo.  63101
314-977-2778; fax 314-977-1180
broediger@slu.edu

/s/ Susan K. Eckles
Susan K. Eckles, Mo Bar # 38641
Managing Attorney
Missouri Protection and Advocacy Services
2000 Innerbelt Business Center Drive
Overland, Mo  63114
(314) 256-9611; (314) 785-1707 fax
susan.eckles@mo-pa.org

/s/ Vincent K. Heitholt
Vincent K. Heitholt, Mo Bar # 68129
Staff Attorney
Missouri Protection and Advocacy Services
2000 Innerbelt Business Center Drive
Overland, Mo  63114
(314) 256-9591; (314) 785-1707 fax
vincent.heitholt@mo-pa.org

Todd R. Romkema, Mo Bar # 68604
Staff Attorney
Missouri Protection and Advocacy Services
2000 Innerbelt Business Center Drive
Overland, Mo  63114
(314) 256-9627; (314) 785-1707 fax
todd.romkema@mo-pa.org